IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

In re.:

Heparin Products Liability Litigation          MDL No. 1953

******************************

Shine Philip,

    Plaintiff                    Case No. 1:10-hc-60195

  v.                                        **ORDER**

Baxter Healthcare Corporation, *et al*.,

    Defendants


This is a suit arising from the alleged administration of contaminated heparin, which the Judicial Panel on Multi-District Litigation has referred to the undersigned.

Pending are motions for summary judgment by the defendants Baxter Healthcare Corporation (Baxter) [Doc. 37] and St. David's Healthcare Partnership L.P., L.L.P. (St. David's) [Doc. 35].

For the reasons that follow, the motions shall be granted.

### Discussion

On August 30, 2008, while attending a football game, plaintiff Shine Philip suffered a heart attack. Shortly after arriving at St. David's and being stabilized, his blood pressure was within normal ranges.

At 11:31 the next morning, plaintiff received a bolus dose of heparin. His blood pressure dropped immediately. He went into cardiogenic shock. As a result, he permanently lost his eyesight.[1]

The pending motions raise a single issue: namely, whether the plaintiff has offered sufficient proof to enable a jury to conclude that Baxter manufactured the heparin he received just before his loss of blood pressure.

As of May, 2008, after responding to several earlier recall notices from Baxter, the hospital confirmed that it had no Baxter heparin in stock. Thus, it and Baxter contend, there is no reasonable basis for concluding that the heparin plaintiff received the following August came from Baxter, much less that it was contaminated.

The last shipment from Baxter to St. David's occurred at the end of December, 2007. Thereafter the hospital ordered heparin from another manufacturer, APP.

Defendants point out, and plaintiff does not dispute, that the hospital uses heparin extensively and reorders it as supplies are exhausted. This occurs, according to the hospital, typically on a bi-weekly basis.

In addition to following up after receiving Baxter's recall notices, the hospital regularly examined the machines throughout the hospital from which nurses obtain heparin to administer to patients. This monthly examination checked for recalled and expired medications.

Plaintiff points to the immediacy of his reaction to the heparin as proof of its contamination. Such an immediate and "profound" hypotensive reaction, plaintiff contends, and Baxter has publicly acknowledged, is a manifestation of, if not the principal effect from contaminated heparin.

---

[1] Defendants do not presently challenge plaintiff's medical testimony correlating the drastic decline of blood pressure with his vision loss. They do contend that Baxter heparin was not the cause of his severe hypotension.

Plaintiff argues, moreover, that the hospital's procedures for reacting to recall notices failed to conform to Texas law and were, in any event, haphazardly and indifferently followed. Plaintiff faults St. David's failure, which the hospital disputes, to have a written recall protocol, as required by Texas law. He also faults the pharmacist's delegation to others of the job of retrieving Baxter heparin.

This is not all there is to the record before me. The hospital has recently produced its electronic administration of medication record (eMAR). This shows conclusively that plaintiff received APP, not Baxter heparin.

Before a patient receives prescribed medication, the administering nurse scans the medication to confirm that it is the correct medication. The scan creates a record, and that record shows that APP provided the heparin.

In response to this evidence, plaintiff has produced an expert's opinion to the effect that the eMAR record of what plaintiff got is not reliable because databases are accessible and subject to tampering and alteration.

Plaintiff's expert does not, however, assert that he found any evidence of such alteration. He noted, rather, that he would have to examine the hard drive to detect alterations. It appears that he has not done so.

Thus, as the expert's report now stands, he has offered no basis, aside from his conclusory representation that such might occur, for concluding that someone altered the plaintiff's eMAR record.

The hospital, in response, has submitted an affidavit by Debra Castleberry [Doc. 56, Ex. 4 (under seal)], the hospital's IT director. Her unequivocal testimony is that access by unauthorized

3

individuals is not possible. Anyone with a motive to alter the record would have "view only" access. She confirms that no one has attempted to alter or edit the pertinent eMAR record.

In the face of this evidence—against which plaintiff offers, as noted, only speculation—no rational jury could find that it was more likely than not that plaintiff received contaminated Baxter heparin. That being so, both defendants are entitled to summary judgment.

## Conclusion

In light of the foregoing, it is hereby

ORDERED THAT: defendants' motions for summary judgment [Docs. 35, 37] be, and the same hereby are granted.

So ordered.

/s/ James G. Carr
Sr. United States District Judge